UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HEALTHCARE CORPORATION OF AMERICA, | Civ. No. 2:12-2910 (KM) |
| Plaintiff, | |
| v. | OPINION |
| DATA RX MANAGEMENT, INC., | |
| Defendant-Counterclaimant. | |
| DATA RX MANAGEMENT, INC., | |
| Third-Party Plaintiff, | |
| v. | |
| PRESCRIPTION CORPORATION OF AMERICA, | |
| Third-Party Defendant. | |

**KEVIN MCNULTY, U.S.D.J.:**

    Healthcare Corporation of America ("HCA")[1] and Data Rx Management, Inc. ("Data Rx") were intermediaries in a chain linking pharmacies and a pharmacy benefit plan. Data Rx operates a network of pharmacies; on their behalf, it submits claims for prescriptions to HCA. For those pharmacy prescription claims, HCA serves as a billing agent on behalf of its pharmacy benefit plan clients, who pay the claims. HCA claims that Data Rx breached their Pharmacy Claims Processing Agreement by overcharging, failing to provide rebates, not obtaining prior authorizations for claims, and for owing approximately $550,000 to its mail order pharmacy.

    Data Rx has filed a counterclaim, alleging that HCA owes its pharmacy network nearly $3 million in undisputed but unpaid claims. Based on this

---

[1] Prescription Corporation of America ("PCA") is a wholly owned subsidiary of HCA. The two entities share the same office and website. For simplicity, I will refer to HCA and PCA together as "HCA" except when it is necessary to distinguish their roles.

Counterclaim, Data Rx has applied for a preliminary injunction requiring HCA to turn over all of the outstanding money owed to Data Rx's pharmacies or, in the alternative, for the Court to freeze those funds.

Data Rx emphasizes that it, like HCA, is a middleman; Data Rx and HCA simply pass through the money that the pharmacies are owed for prescriptions they have already filled. If Data Rx is correct, HCA is opportunistically holding money that it received solely as an intermediary, money that should have been forwarded along the chain to the pharmacies. Whether there is a penalty to be paid for such behavior remains to be seen; I must focus on the narrow issue before me, which is an application for a preliminary injunction. Although Data Rx has made a strong showing on the merits, its application must be denied because it has not demonstrated that it is likely to suffer irreparable harm in this money-damages case. That is not to say that Data Rx's claims could not prevail on summary judgment or at trial, but at present, they do not furnish a basis for injunctive relief.

## I.     BACKGROUND

HCA and Data Rx linked pharmacies with the pharmacy benefit plans that reimburse them for filling prescriptions. They worked together to process claims. In this case, HCA's benefit plan client was Middlesex County. Data Rx's clients consisted of a network of pharmacies where plan beneficiaries would have their prescriptions filled. In simplified form, the process is as follows: A person insured under the Middlesex County plan presents a prescription to one of the pharmacies in Data Rx's network. That pharmacy confirms though a database maintained by Data Rx and HCA that the individual is a covered beneficiary of the Middlesex plan. Based on that assurance, the pharmacy fills the individual's prescription. The pharmacy then invoices Data Rx for the cost of the drugs and the pharmacist's dispensing fee.[2] Data Rx performs services, including the adjudication of claims and application of rebates. Data Rx then invoices HCA for the Pharmacy Charges. HCA periodically bills its client, the Middlesex County pharmacy benefit plan. Middlesex County pays HCA's invoice. The money then flows back down the chain, through HCA and Data Rx, to the pharmacies that filled the prescriptions. HCA and Data Rx retain their processing fees (Data Rx gets a flat fee of $1.50 per transaction). The

---

[2]     The aggregate amount of outstanding drug costs and dispensing fees due to all of Data RX's pharmacies is the subject of Data Rx's application for injunctive relief. The Court will refer to this amount as the "Pharmacy Charges."

balance is used to reimburse the pharmacy for the drugs it dispensed. Thus the vast bulk of the money that flows through HCA and Data Rx is not their money; it belongs to the pharmacies who dispensed the drugs based on the assurance of payment from the Middlesex County pharmacy benefits plan.

These relationships are governed by numerous contracts, two of which are particularly relevant here:

The first is the Pharmacy Claims Processing Agreement between HCA and Data Rx (the "HCA Agreement"), which became effective May 1, 2010. In relevant part, it required (1) Data Rx to adjudicate each claim and to pay a rebate for each qualified prescription and (2) HCA to pay Data Rx's invoices within fourteen days of receiving the necessary funds from Middlesex County. (Appendix A to Agreement, Ex. A to Compl. [ECF No. 1]).

The second pertinent agreement is the claims processing contract between Middlesex County and Data Rx, dated around January 28, 2011 (the "Middlesex Contract"). An exhibit to the Middlesex Contract designates HCA's subsidiary, PCA, as the billing agent. The Middlesex Contract called for Data Rx to send biweekly invoices for its services. Within two weeks of Middlesex County's receipt of those invoices, the Middlesex Contract required it to pay them through PCA. Around December 2010 or 2011,[3] HCA stopped paying Data Rx's Pharmacy Charges and Processing Fees, retaining them instead. Over the next five months, Data Rx placed HCA on oral and written notice of its failure to pay. The amount of Pharmacy Funds outstanding, according to Data Rx, is $2,995,211.41.

In short, HCA has been paid by Middlesex County, but has not transferred these funds down the line to Data Rx. Data Rx, as a result, has not paid most of the money owed to its network pharmacies.[4]

---

[3]   The Counterclaim states that HCA ceased paying Data Rx in late 2010. (Counterclaim ¶ 17 [ECF No. 5]). The affidavit of Brian Vossler, Data Rx's Executive Vice President states that this occurred in December 2010. (Vossler Aff. ¶ 9 [ECF No. 10-4]). Data Rx's moving papers state that the date is December 2011 (Data Rx Br. at 6 [ECF No. 10-3]). HCA's Answer to the Counterclaim states that it stopped paying invoices in December 2011. (Answer to Counterclaim ¶ 17 [ECF No. 40]).

[4]   At oral argument, Data Rx's counsel stated that Data Rx has advanced approximately $900,000 to certain pharmacies whose claims had been left unpaid as a result of HCA's having impounded the disputed funds.

HCA, it turns out, believes it is entitled to withhold the money because it has claims of its own against Data Rx. On May 15, 2012, HCA filed the Complaint in this action, alleging that Data Rx overcharged it, did not pay HCA's mail order pharmacy, did not obtain required prior authorizations, and failed to provide rebate and data services pursuant to the Agreement. The Complaint asserts causes of action for breach of contract, breach of warranties, and tortious interference with prospective economic advantage.[5] In short, according to HCA, Data Rx has breached their contract and rendered deficient performance.

On June 19, 2012, Data Rx filed an answer, a counterclaim (the "Counterclaim"), and a third party complaint against PCA. The Counterclaim and third party complaint reflect the factual allegations outlined above: it alleges that HCA is holding the Pharmacy Charges and Processing Fees due to Data Rx and its pharmacies under the HCA Agreement. The Counterclaim includes causes of action for breach of contract, unjust enrichment, promissory estoppel, and tortious interference.

On August 3, 2012, Data Rx filed this Application for Injunctive Relief seeking an order directing HCA and PCA to pay over the Pharmacy Charges, or, in the alternative, enjoining HCA and PCA from dissipating the Pharmacy Charges.[6] Data Rx says it is likely to succeed on the merits because the HCA

---

[5] Because this is the first opinion filed in this case, I note that jurisdiction appears to be proper because diversity of citizenship exists and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Both HCA and its subsidiary, PCA, are New Jersey corporations and their principal place of business is in New Jersey. Data Rx is a Texas corporation with its principal place of business in Georgia. Venue is proper because a substantial portion of the events and omissions giving rise to the action occurred in New Jersey. 28 U.S.C. § 1391.

[6] HCA's initial Answer to the Counterclaim, dated July 23, 2012, "neither admit[ted] nor den[ied]" essential allegations, including ones based on facts well within HCA's control. That pleading practice is apparently common enough in state court, but it is not really an option here. R.E. Bartkus & E.J. Sher, *New Jersey Federal Civil Procedure,* § 7-5 at 248 (2013). Under the Federal Rules, an allegation "is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. P. 8(b)(6). Of course, the Federal Rules do not hold parties to a standard of omniscience. Where a party *legitimately* answers that it lacks knowledge or information sufficient to form a belief about a particular allegation, this will have the effect of a denial. Fed. R. Civ. P. 8(b)(5).

Data Rx filed its application for a preliminary injunction in reliance on HCA's non-denials of the critical allegations, and the Court noted on the docket that it expected this issue to be addressed at oral argument. The predictable response was a

Agreement requires HCA to timely pay Data Rx's invoices. Data Rx argues that it will suffer irreparable harm because its business depends on timely paying its network pharmacies; that HCA and PCA will not suffer any irreparable harm because the funds it is holding are due to the pharmacies; and that the public interest favors granting the injunction. HCA opposes the motion, arguing that it is effectively a premature motion for partial summary judgment and that Data Rx meets none of the prerequisites for a preliminary injunction. On February 27, 2013, the Court heard oral argument on Data Rx's application for a preliminary injunction.

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish

[1] that he is likely to succeed on the merits,

[2] that he is likely to suffer irreparable harm in the absence of preliminary relief,

[3] that the balance of equities tips in his favor, and

[4] that an injunction is in the public interest."

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (line breaks and numbering added); *accord American Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012); *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004); *see Adams v. Freedom Forge Corp.*, 204 F.3d 475, 486 (3d Cir. 2000) (movant bears the burden of establishing these elements).

These four factors guide the Court's inquiry, but the Third Circuit has made clear that a court may not grant injunctive relief, "regardless of what the equities seem to require," unless the plaintiff carries its burden of establishing "both (1) that they are likely to experience irreparable harm without an injunction and (2) that they are reasonably likely to succeed on the merits." *Adams*, 204 F. 3d at 484; *accord Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (placing particular weight on the probability of

---

motion to amend the Answer to the Counterclaim, which Magistrate Judge Hammer granted on December 18, 2012. Data Rx did not revise its preliminary injunction motion in response to the amended Answer [ECF 40], but proceeded with the motion, *mutatis mutandis*.

irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987); *Freixenet, S.A. v. Admiral Wine & Liquor Co.*, 731 F.2d 148, 151 (3d Cir. 1984).

### III. ANALYSIS

Data Rx is seeking an order directing HCA and PCA to turn over approximately $3 million to cover the outstanding Pharmacy Charges, or, in the alternative, that it be put in a trust.[7] Data Rx, as the applicant for preliminary injunctive relief, carries a heavy burden. I find that its likelihood of success on this claim is quite good. But because it has not shown that it is likely to suffer irreparable harm, preliminary injunctive relief is not appropriate, and I will deny the motion.

#### A. Likelihood of Success on the Merits

Data Rx's primary counterclaim is for breach of contract based on HCA's failure to pay over the Pharmacy Charges and Processing Fees pursuant to the terms of the HCA Agreement.

"To establish a breach of contract claim, a [counterclaimant] has the burden to show that the parties entered into a valid contract, that the [counterclaimant defendant] failed to perform his obligations under the contract and that the [counterclaimant] sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265, 920 A.2d 678, 689 (App. Div. 2007). Failure to make contractually required payments constitutes a material breach. *Magnet Resources, Inc. v. Summit MRI, Inc.*, 318 N.J. Super. 275, 287, 723 A.2d 976, 982 (App. Div. 1998).

The parties do not disagree that a valid contract existed. The HCA Agreement states that "the funds for the Data Rx Services described herein . . . are due and payable within fourteen (14) days of receipt of funds." (HCA Agreement ¶ 3). Appendix A to the HCA Agreement states that "Data Rx shall

---

[7] At oral argument, Data Rx acknowledged that of the outstanding Pharmacy Charges, approximately $500,000 is owed to HCA's own mail order pharmacy. Therefore, the amount that is truly in dispute is approximately $2.5 million. HCA's Complaint alleges that the amount due to its mail order pharmacy is $543,876.01, although at oral argument, counsel represented the amount is closer to $700,000. (Complaint ¶ 11).

bill [HCA] for cost of drugs which shall be Data Rx's network contracted prices plus transaction and administration fees . . . twice per month." (Appendix A to HCA Agreement ¶ 11).

A question arises as to why HCA should feel entitled to hold the *pharmacies'* money hostage to secure its claims against *Data Rx*. HCA does not meaningfully dispute that it is holding a significant amount of money due to pharmacies who are not parties to this action. HCA concedes that Data Rx has sent invoices for the Pharmacy Charges and Processing Fee, and it has conceded at oral argument that it does not challenge the amount of these invoices. HCA admits that it has been paid by Middlesex County for past prescriptions filled by the pharmacies. (Counterclaim ¶ 20; Answer to Counterclaim ¶ 20). HCA has not turned these funds over to Data Rx.[8] Instead, it has retained these funds as security for its yet-unproven contract claims against Data Rx. HCA, whether in its papers or at oral argument, has not identified any contractual provision that would authorize this kind of self-help.[9] I find that Data Rx is likely to succeed on the merits of its breach of contract claim.

This matter was not presented to the court as a motion for summary judgment, nor was HCA put on notice to respond to it as such. I note, however, that at present, HCA has not put forth any arguments or facts that, on an appropriate motion at the appropriate time, would stand in the way of entry of judgment on Data Rx's claim.

### B. Irreparable Harm

Where Data Rx's application for a preliminary injunction falters is on the irreparable harm element. In its moving papers and at oral argument, Data Rx advanced three arguments in support of a finding of irreparable harm: First, whatever quarrel HCA has with Data Rx, the money it is withholding is almost all due to the network pharmacies, not Data Rx. Second, HCA is holding the $3 million because it might go bankrupt. Third, Data Rx's business reputation will

---

[8] HCA's initial answering strategy, *see* n.6, *supra,* may reflect its inability to deny the essentials of Data Rx's claims.

[9] HCA is essentially claiming recoupment or setoff, based on its claims against Direct Rx. That would not, in my view, bar a finding that Direct Rx has established its claims. Whether execution of any such partial judgment should be stayed pending resolution of HCA's offsetting claims would be, of course, a separate issue.

suffer as its network pharmacies continue to go unpaid. Tied to this third argument is Data Rx's point that the system works only because the pharmacies at the end of the chain fill prescriptions trusting that they will receive reasonably prompt payment; if that faith goes unrewarded, the whole structure must eventually crumble. These arguments, however appealing, are unavailing in the context of preliminary injunctive relief.

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), while not precisely on point, suggests that a preliminary injunction would be inappropriate. There, plaintiffs had sought a preliminary injunction restraining Grupo Mexicano from transferring assets. Plaintiffs alleged that Grupo Mexicano was at risk of insolvency, or already insolvent; that it was planning preferential transfers of its most valuable assets to its Mexican creditors; and that these actions would frustrate any judgment plaintiffs could obtain. *Id.* at 312-13. The Supreme Court held that a plaintiff who sued for breach of contract seeking damages, a remedy at law, could not obtain a preliminary injunction against the assets of a debtor against whom it had no judgment. *Id.* at 332-33.[10]

The Third Circuit has explained that to satisfy the irreparable harm prong, the applicant must "demonstrate[] a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy burden." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000) (internal citations omitted). Where an injury is "purely economic in nature and thus compensable in money," a finding of irreparable harm is unlikely. *Morton v. Beyer*, 822 F.2d 364, 371–72 (3d Cir. 1987).

It is not, however, impossible: if the movant can show "something uniquely threatening about the particular loss of money," the irreparable harm requirement may be met. *Adams*, 204 F.3d at 485. I nevertheless reject Data

---

[10] *Grupo Mexicano* does not prohibit the issuance of a preliminary injunction in an action for equitable relief. 527 U.S. at 324–25 (distinguishing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940), noting that in *Deckert* "the preliminary injunction 'was a reasonable measure to preserve the status quo pending a final determination of the questions raised by the [equitable] bill'"). Data Rx has pled in the alternative a claim of promissory estoppel, a quasi-contractual remedy with roots in equity jurisprudence. The remedy that Data Rx seeks, however – and the only one that is appropriate – is money damages. *Cf. Bsales v. Texaco, Inc.*, 516 F. Supp. 655, 664 (D.N.J. 1981) (vacating preliminary injunction for quasi-contract claims in litigation over leased service station parcels because "[t]he plaintiffs' exclusive remedy for the wrongs they allege is damages," not specific performance).

Rx's arguments because the alleged harm here is purely economic in nature. Data Rx has failed to demonstrate that the harm here goes beyond what would be compensable in damages.

First, the relationship between Data Rx and HCA has terminated, so the amount in dispute pursuant to Data Rx's claims is not increasing. There is no ongoing money hemorrhage that requires an equitable tourniquet; the parties are fighting over a discrete sum of money.

Second, Data Rx has not demonstrated that "damages could very conceivably run beyond [HCA's] ability to pay them." *Eli Lilly & Co. v. Premo Pharm. Labs., Inc.*, 630 F.2d 120, 137 (3d Cir. 1980). Post-*Grupo Mexicano,* this would be a doubtful basis for a finding of irreparable harm in any case. Data Rx brought to the Court's attention that a private equity firm is purchasing HCA and merging it into an existing, similar business. Counsel for HCA represented on the record that the surviving entity will retain legal liability for any damage award in this action. Counsel stated as well that the combined company is projected to have significantly greater revenues than HCA alone. Data Rx did not dispute either proposition. It has not demonstrated a significant risk that it could not recover any judgment it might receive.

Third, Data Rx's reputational harm argument has been rejected by the Third Circuit. "[A] plaintiff in a breach of contract case cannot convert monetary harm into irreparable harm simply by claiming that the breach of contract has prevented it from performing contracts with others and that this subsequent failure to perform will harm the plaintiff's reputation." *Bennington Foods LLC v. St. Croix Renaissance, Grp., LLP*, 528 F.3d 176, 178-79 (3d Cir. 2008); *see Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3rd Cir. 1989) ("[t]he availability of adequate monetary damages belies a claim of irreparable injury"); *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3rd Cir. 1982) ("we have never upheld an injunction where the claimed injury constituted a loss of money, a loss capable of recoupment in a proper action at law").

Data Rx has alleged that the trust on which its supply chain is based will erode if a preliminary injunction is not granted. It has not, however, (1) presented any sworn statements from pharmacies stating that such a chilling effect is taking place, or (2) differentiated this supply chain from any other where suppliers take on financial risk by dispensing products in advance of receiving payment. In short, Data Rx has not submitted proof of loss of reputation or demonstrated that its pharmacy network is different from "other

types of commerce in such a way that normal breach of contract remedies could not provide a remedy." *Bennington,* 528 F.3d at 179.[11]

In short, this case does not present the kind of harm to Data Rx's reputation that might support preliminary injunctive relief. *Bennington, supra,* distinguished two cases in which "the reputation of the plaintiff was *directly* endangered by the defendant's actions." 528 F.3d at 179-180 (emphasis added). Thus, for example, the misleading use of the plaintiff's trademarks, as in *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.,* 143 F.3d 800 (3d Cir. 1998), is routinely recognized as irreparable harm. And in *Fitzgerald v. Mountain Laurel Racing, Inc.,* 607 F.2d 589 (3d Cir. 1979), the defendant racetrack operator's suspension of a trainer and harness racer on suspicion of cheating was the ordinary stuff of a libel action. But I conclude, along with *Bennington,* that the breach of contract here is not in the same category:

> There is nothing in this case to distinguish it from a myriad of other breach of contract cases. Thus, there is no reason to make the extended causal inferences necessary to find irreparable harm to reputation. Any damage [Data Rx] may suffer as a result of [HCA's] alleged breach of contract—to the extent it is not speculative—can be proven as an element of the breach of contract claim against [HCA].

528 F.3d at 180.

Although Data Rx has shown it is likely to succeed on the merits, it has not demonstrated that it is suffering, or likely to suffer, irreparable injury. I will forgo analysis of the balance of harms and the public interest, the third and fourth preliminary injunction factors. *See Bennington,* 528 F.3d at 179. ("As we find that Bennington has not met [the] heightened standard [for a mandatory preliminary injunction] and that there is no possibility of irreparable harm on the record before us, there is no need to analyze the other

---

[11] At any rate, Data Rx may presumably stave off some of the reputational harm by telling its network pharmacies why they have not been paid – *i.e.*, because HCA is holding the money as part of this dispute. Data Rx has also acknowledged that it has significant financial resources; it might be able to cover some or all of the Pharmacy Charges while this matter is pending. I do not imply that Data Rx has an obligation to inform the pharmacies of the HCA dispute or to advance money on unpaid claims; it may or it may not. I cite these facts only in connection with the irreparable harm calculus.

prongs of the test.") The lack of irreparable injury, even standing alone, requires that I deny the motion for a preliminary injunction.

## IV. CONCLUSION

For the reasons stated above, Data Rx's application for a preliminary injunction is **DENIED**. An appropriate order follows.

_____
KEVIN MCNULTY
United States District Judge

Dated: March 27, 2013